

ENTERED
03/30/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **TECHNICOOL SYSTEMS, INC.** | § | **CASE NO: 15-34435** |
| Debtor(s) | § | |
| | § | **CHAPTER 7** |

## MEMORANDUM OPINION

National Oilwell Varco ("NOV") filed a $3,000,000.00 proof of claim in the chapter 7 bankruptcy case of Technicool Systems, Inc. (Claim No. 9-1). The parties seek to consolidate all pending litigation in this Court, including a state court suit involving third parties to the bankruptcy. (ECF No. 137 at 1). The Court raised the issue of whether it had subject matter jurisdiction and "Stern" authority to adjudicate the third-party state court dispute between NOV and Robert Furlough, Technicool's owner.

The Court has related to jurisdiction over this matter and the parties have consented to a final decision by this Court. Accordingly, the Court may adjudicate this dispute.

## Background

Technicool provides industrial heating, vacuum, and air conditioning ("HVAC") units to the oil and gas industry. (Case No. 17-03265, ECF No. 42 at 2). Furlough initially founded Safe-T-Cool in 1997 as a spin-off of Powerhouse Marine International, Inc. However, in 2006, a trademark dispute arose over Furlough's right to use the name Safe-T-Cool, leading Furlough to form Technicool as a new entity in 2009. Technicool was to assume Safe-T-Cool's operations.

NOV operated as one of Technicool's principal customers, utilizing Technicool's products for oil production. (ECF No. 9 at 2–3). From 2010 to 2014, NOV purchased over 200 HVAC units from Technicool based on Technicool's representations that its products could perform in the most extreme climates. (ECF No. 9 at 4). However, when the HVAC units

purportedly began failing, NOV filed suit against Technicool on November 10, 2014, in Texas state court alleging various causes of action, including breach of contract, breach of warranty, negligent misrepresentation, and product liability. (ECF No. 9 at 3).

Technicool, continued operating until August 14, 2015, when it filed for chapter 7 bankruptcy. In Technicool's bankruptcy, NOV filed a motion with the Court seeking to lift the automatic stay in order to pursue litigation against Furlough in state court. (*See* ECF No. 9). On October 30, 2015, the Court entered an Order lifting the stay allowing NOV to file a new suit against Furlough or join him to NOV's existing state court suit. (ECF No. 38 at 1). However, the Order was premised on the condition that any suit against Furlough could not allege any cause of action for damages asserted on behalf of Technicool's bankruptcy estate. (ECF No. 38 at 1).

NOV remained the only active creditor in Technicool's bankruptcy case. NOV reached an agreement with Lowell T. Cage, the Chapter 7 Trustee, for the Trustee to retain NOV's counsel to represent the him in any litigation against Technicool's former owners and affiliates. As part of the agreement, NOV willingly subordinated its claims against the estate to allow 100% payment of all administrative expenses and 100% recovery by all other unaffiliated, general unsecured creditors in this case. With the subordination agreement in place, the Court approved this arrangement, allowing NOV's counsel to serve as the Trustee's litigation counsel. (ECF No. 96 at 1).

On December 11, 2017, NOV filed an amendment to its proof of claim, increasing the amount of its claim to $10,000,000.00 from $3,000,000.00 based on the same purported causes of action as its state court suit. These causes of action includedTechnicool's alleged breach of contract, breach of warranty, and fraud. (Claim No. 9-2 at 3). Furlough objected to NOV's

amendment on the grounds that it was unsupported and late-filed. (ECF No. 133). The Court held a hearing in which it authorized NOV's proof of claim amendment. (February 1, 2018 Hearing at 11:09 a.m.).

On February 14, 2018, the parties filed a joint motion to consolidate all pending litigation—including the state court case, NOV's proof of claim, and remaining adversary proceedings—in this Court. (ECF No. 137 at 1). The Court raised the issue of whether it had subject matter jurisdiction and "Stern" authority to adjudicate the litigation between NOV and Furlough due to the fact that neither is a party to Technicool's bankruptcy case. (February 14, 2018 Hearing at 3:23 p.m.). The Court took this matter under advisement on March 1, 2018.

## **Jurisdiction**

A bankruptcy court's jurisdiction is derived from 28 U.S.C. § 1334(a), which provides the district court with "original and exclusive jurisdiction of all cases under title 11." The district court also has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). If a district court has jurisdiction over a bankruptcy matter in the Southern District of Texas, General Order 2012-6 automatically refers such matters to bankruptcy courts.

The Fifth Circuit defines "related to" jurisdiction to include matters that "could conceivably have any effect on the estate being administered in bankruptcy." *In re Walker*, 51 F.3d 562, 568 (5th Cir. 1995); *see also In re Galaz*, 765 F.3d 426, 430 (5th Cir. 2014). Typically, third-party complaints do not have any effect on the bankruptcy case or estate and thus do not fall within "related to" jurisdiction. *Galaz*, 765 F.3d at 431.

In *Galaz*, a debtor filed for bankruptcy and then initiated fraudulent transfer suits under the Texas Uniform Fraudulent Transfer Act ("TUFTA") for breach of fiduciary duty. *Id*. at 429.

The Fifth Circuit held that the debtor's claim fell within related to jurisdiction. *Id*. at 430. Although the debtor's state law claim was filed against parties unconnected to the bankruptcy estate, the claim "could, at least conceivably increase the size of [the debtor's] bankruptcy estate," thus falling within the court's related to jurisdiction. *Id*.

The subordination agreement between NOV and the Trustee similarly satisfies the Fifth Circuit's requirement that a related claim have an effect on the bankruptcy estate. NOV agreed that any recovery from its proof of claim would first be used to pay administrative expenses and unaffiliated general unsecured creditors before its own recovery. Accordingly, with the subordination agreement in place, NOV's suit could result in a potential recovery for Technicool's bankruptcy estate, establishing related to jurisdiction. *See also Core States Bank, N.A. v. Hulus America, Inc.*, 176 F.3d 187, 204 (3d Cir. 1999) (holding that a subordination agreement between creditors satisfies requirements for "non-core 'related to' bankruptcy jurisdiction.").

## Constitutional Authority

Bankruptcy courts may only enter final judgments in cases where statutory or constitutional authority exists. *Stern v. Marshall*, 564 U.S. 462, 482 (2011). Statutory authority is conferred on bankruptcy courts by 28 U.S.C. § 157(b)(1), which allows bankruptcy judges to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." The statute also provides a non-exclusive list of core proceedings over which bankruptcy judges have authority to adjudicate. 28 U.S.C. § 157(b)(2). If a claim is non-core, a bankruptcy judge may either render a final judgment with the parties' consent or may submit proposed findings of fact and conclusions of law which the district court then reviews de novo. 28 U.S.C. § 157 (c)(1), (2).

The constitutional limit on a bankruptcy court stems from Article III, which prevents a bankruptcy judge from hearing a non-core claim "simply because it may have *some* bearing on a bankruptcy case." *Stern*, 564 U.S. at 499. The Article I Judge has constitutional authority only if the "action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id*.

In *Stern*, the Supreme Court examined whether a bankruptcy judge had constitutional authority to render a final decision on a state law counterclaim. *Id*. Although the counterclaim was filed in opposition to a creditor's proof of claim, resolving the state law based counterclaim required different factual and legal determinations than the underlying proof of claim. *Id*. at 497. The Supreme Court distinguished the counterclaim from preference actions which assert "a right of recovery created by federal bankruptcy law." *Id*. at 498. While a successful counterclaim may have benefitted the bankruptcy estate, the mere fact that it had an effect on the bankruptcy case was inadequate to confer constitutional authority with the bankruptcy judge. *Id*. at 499.

The original suit between NOV and Furlough is a state court claim founded on state law causes of action such as breach of contract, breach of warranty, and fraud. On their own, these state law claims fall within the ambit of non-core claims. The litigation NOV seeks to consolidate is against Furlough personally and not Technicool, the debtor in the bankruptcy case. Rendering a decision in this dispute requires distinct factual and legal determinations regarding Furlough's conduct and knowledge that are separate from NOV's dispute with Technicool and the bankruptcy case. Of course, there are overlapping factual issues. The claims against Furlough concern his personal conduct with NOV, but that personal conduct concerned the NOV relationship with Technicool.

In *Wireless Int'l Network, Ltd. v. Sharif*, the Supreme Court held that, if the Article I bankruptcy court lacks constitutional authority, the parties may still consent to having a bankruptcy judge render a final judgment on a claim. 135 S.Ct. 1932, 1949 (2015) (holding that "Article III permits bankruptcy courts to decide *Stern* claims submitted to them by consent"). A distinction was drawn between Congress's attempt to circumvent a party's *right* to an Article III court and the parties' willing *consent* to have their claims decided by an Article I court. *Id*. at 1944. The Supreme Court found that allowing bankruptcy judges to adjudicate *Stern* claims through consent did not offend constitutional principles because bankruptcy courts are inherently limited in their adjudicative function and district courts retain primary authority over cases referred to bankruptcy courts. *Id*. at 1945. Ultimately the current legislative scheme protects the parties' right to adjudication in an Article III court so that there is no danger in allowing parties to consent to having their disputes decided in an Article I court. *Id*. at 1947.

The parties have expressly consented to the bankruptcy court adjudicating the dispute between NOV and Furlough.[1] (February 14, 2018 Hearing at 3:23 p.m.). Although the Court lacks constitutional authority over this dispute without consent, the Court may decide the pending state court dispute between Furlough and NOV given the parties' consent.

---

[1] Furlough Counsel – "Yes your honor, and to be clear, my motion talks about all the parties having agreed to waive jury trial rights. Robert Furlough on the Trustee's side—in other words on the side I'm handling—consents to entry of final judgments by the bankruptcy court. I would recommend Mr. Ballases do the same on the state court side."

Court – "Mr. Ballases do you?"

Mr. Ballases – "Yes, I agree."

Court – "Everybody else?"

NOV Counsel – "Everybody else does too"

Huckaby Counsel – "Yes"

Court – "Okay."

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **March 30, 2018.**

                                                          _____
                                                          Marvin Isgur
                                                          UNITED STATES BANKRUPTCY JUDGE